UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ANDREA TALAMANTE &
ELDON TALAMANTE,

       Plaintiffs,

v.                                                                             Civ. No. 12-01218 MV/GBW

BRENT PINO & SCOTT SOLIS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support Thereof ("Motion for Preliminary Injunction"), filed December 30, 2013 [Doc. 37]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Preliminary Injunction is not well taken and will be denied.

## BACKGROUND

Plaintiff Andrea Talamante, the biological mother of the minor child CV/CT (born 2005), and Plaintiff Eldon Talamante, Andrea Talamante's husband as of June 4, 2009, and CV/CT's adoptive father as of October 20, 2011, filed their Petition to Vacate Order Appointing Guardian of Minor ("Petition"), on November 26, 2012 [Doc. 1]. Plaintiffs bring their Petition pursuant to 25 U.S.C. Section 1914 of the Indian Child Welfare Act ("ICWA" or "Act"), 25 U.S.C. §§ 1901 *et seq.*, seeking to invalidate an order entered by the Superior Court of California, County of Santa Clara, on March 30, 2010, appointing Defendant Brent Pino, Andrea Talamante's brother, and Defendant Scott Solis, Brent Pino's partner, guardians of CV/CT ("Guardianship Order"). [*Id.* at

1

1].  The Petition also asks the Court to "restor[e] parental rights and custody of [CV/]CT to Plaintiffs," and to "order[] the United States Marshalls to escort Plaintiffs to retrieve [CV/]CT from the custody of Brent Pino and Scott Solis, and restore her forthwith to Plaintiffs' custody." [*Id.*].  The facts relevant to these claims are set forth in the Court's March 24, 2014, Memorandum Opinion and Order denying Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6).  [Doc. 40].  Instead of restating those facts in full, the Court incorporates them herein by reference.

## STANDARD

Federal Rule of Civil Procedure 65(a) provides that a district court may issue a preliminary injunction on notice to the adverse party.  *See* Fed. R. Civ. P. 65.  The standards for granting a preliminary injunction are well established.  "To obtain a preliminary injunction, the moving party must demonstrate four factors:  (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

The Tenth Circuit has adopted a modified likelihood of success requirement.  *See Walmer v. U.S. Dep't of Defense*, 52 F.3d 851, 854 (10th Cir.) (citing *City of Chanute v. Kansas Gas & Elec. Co.*, 754 F.2d 310, 314 (10th Cir. 1985)), *cert. denied*, 516 U.S. 974 (1995).  If the movant has satisfied the last three requirements for a preliminary injunction, the movant may establish a likelihood of success "by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."  *Id.* (citing *City of Chanute*, 754 F.2d at 314).

The Tenth Circuit disfavors three types of preliminary injunctions and if a motion for preliminary injunction implicates one of these types, a movant must "'satisfy an even heavier burden of showing that the four factors weigh heavily and compellingly in movant's favor':  (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (quoting *SCFC ILC, Inc. v. Visa USA, Inc*., 936 F.2d 1096, 1098-99 (10th Cir. 1991)), *aff'd*, 546 U.S. 418 (2006).  The Tenth Circuit has explained that a motion falling within one of these disfavored categories "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.* at 975-76.  "Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard."  *Id.*

## DISCUSSION

In their Petition, Plaintiffs ask the Court to (1) invalidate the March 30, 2010, Guardianship Order appointing Defendants as CV/CT's guardians, (2) "restor[e] parental rights and custody of [CV/]CT to Plaintiffs," and (3) "order[] the United States Marshalls to escort Plaintiffs to retrieve [CV/]CT from the custody of Brent Pino and Scott Solis, and restore her forthwith to Plaintiffs' custody."  [Doc. 1 at 1].  In their Motion for Preliminary Injunction, Plaintiffs ask the Court to enter an injunction granting them a portion of the relief they request in their Petition:  namely, to "return[ CV/CT] to her home state of New Mexico to reside with her biological mother and adoptive father for the duration of this trial."  [Doc. 37 at 11].  The ICWA, however, does not

3

authorize the injunctive relief that Plaintiffs seek. Plaintiffs therefore cannot demonstrate that they are likely to succeed on the merits of their custodial claims.[1]

The ICWA was enacted to address "rising concern in the mid-1970s over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). The Congressional declaration of policy in the ICWA indicates that the Act seeks to accomplish its aim of "protect[ing] the best interests of Indian children and . . . promot[ing] the stability and security of Indian tribes and families" in two ways: (1) "by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture," and (2) "by providing for assistance to Indian tribes in the operation of child and family service programs." 25 U.S.C. § 1902.

The first means by which the ICWA attempts to accomplish its aim of protecting Indian

---

[1] Plaintiffs contend that the more lenient modified-likelihood-of-success standard applies because the injunction that they seek is not disfavored. *See supra* at 2-3 (explaining that if an injunction is disfavored, a movant cannot rely on the modified likelihood of success standard). Plaintiffs argue that their motion does not alter the status quo and it does not seek a mandatory preliminary injunction. Plaintiffs claim that the "'last peaceable uncontested status existing between the parties before the dispute developed' . . . was . . . before [CV/]CT was in the physical custody of the Defendants," and that the injunction they seek does not alter this status. [Doc. 37 at 11 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005) (explaining that "status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing"))]. Plaintiffs also maintain that the injunction they seek is not mandatory because, although the relief "appears to affirmatively require the Defendants to act in a particular way, . . . it does not require 'ongoing supervision' by the Court." [*Id.* at 37 (quoting *Schrier*, 427 F.3d at 1261)]. The Court does not find Plaintiffs' arguments persuasive. Even if, however, the Court were to conclude that the injunction is not disfavored and were to apply the modified likelihood of success standard, the Court nonetheless would deny the motion. The Court's reasoning in support of its decision to deny the Motion for Preliminary Injunction is equally applicable under either standard.

children and promoting the stability of Indian families is by establishing minimum federal standards for jurisdiction and procedure. Section 1911 sets forth the ICWA's provisions concerning jurisdiction over Indian child custody proceedings that the Supreme Court has described as the "heart" of the Act. *See Holyfield*, 490 U.S. at 36. The Supreme Court has explained,

> Section 1911 lays out a dual jurisdictional scheme. Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child "who resides or is domiciled within the reservation of such tribe[.]" Section 1911(b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court.

*Id.*[2]

Sections 1911, 1912, and 1913 of the ICWA establish the procedural standards for those proceedings which do take place in state court instead of tribal court. *See id.*; 25 U.S.C. §§ 1911-1913. The procedural safeguards "include requirements concerning notice and appointment of counsel; parental and tribal rights of intervention. . . ; procedures governing voluntary consent to termination of parental rights; and a full faith and credit obligation in respect

---

[2] Specifically, Section 1911(a) provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). Section 1911(b) provides that "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe." *Id.* § 1911(b).

to tribal court decisions." *Holyfield*, 290 U.S. at 36 (citing 25 U.S.C. §§ 1901-1914).

The second means by which the ICWA seeks to establish its aim of protecting Indian children and families is by "creat[ing] . . . a program of grants to Indian tribes and organizations to aid in the establishment of child welfare programs." *Id.* at 37 n.6 (citing 25 U.S.C. §§ 1931-1934). The grants provide funding for both on- and off-reservation programs. *See* 25 U.S.C. §§ 1931-1934.

In addition to setting forth minimum jurisdictional and procedural standards for custody proceedings and creating grants to promote the welfare of Indian children, Section 1914 of the ICWA authorizes parents and Indian tribes to petition any court of competent jurisdiction to invalidate state-ordered foster care placements that violate the jurisdictional and procedural requirements set forth in Sections 1911, 1912, and 1913 of the Act. *See* 25 U.S.C. § 1914 (authorizing a parent to "petition any court of competent jurisdiction to invalidate [an] action" "for foster care placement . . . under State law," if the parent can "show[] that such action violated any provision of sections 1911, 1912, and 1913"); *Holyfield*, 490 U.S. at 38 n.12 (explaining that "§ 1914 authorizes the tribe (as well as the child and its parents) to petition a court to invalidate any foster care placement or termination of parental rights under state law upon a showing that such action violated any provision of sections [1911, 1912, or 1913]") (internal quotations and citation omitted). Moreover, the ICWA confers standing on the Indian child's tribe to participate in child custody adjudications and allows an Indian child's tribe to intervene at any point in state court proceedings for foster care placement or termination of parental rights. *See id.* at 38 n.12.

In their Motion for Preliminary Injunction, Plaintiffs ask the Court to allow CV/CT to reside with them for the duration of the trial. [Doc. 37 at 11]. The ICWA, however, does not authorize a federal court to decide in whose custody an Indian child belongs or whether a foster

6

care placement or termination of parental rights should occur.  This is a task that the ICWA prescribes to the exclusive jurisdiction of the tribal courts, *see* 25 U.S.C. § 1911(a), or, if the Indian child is not domiciled on a reservation, to the concurrent jurisdiction of the tribal and state courts, *see id.* § 1911(b); *Holyfield*, 490 U.S. at 36.

Because Plaintiffs did not appear in the California Superior Court guardianship proceeding, and the state court entered the Guardianship Order appointing Defendants guardians of CV/CT, Plaintiffs' sole recourse under the ICWA is to seek to invalidate the Guardianship Order pursuant to Section 1914 on the ground that it violates one of the Act's procedural or jurisdictional requirements.  *Cf.* 25 U.S.C. § 1914 (authorizing a parent to petition any court to invalidate an order that violates the provisions of Sections 1911, 1912, or 1913 of the ICWA); *Parkell v. S. Carolina*, 687 F. Supp. 2d 576, 588-89 (D.S.C. 2009) (holding that "[t]he Plaintiffs' remedy [for violation of the ICWA], if any at all, would be for the federal court to invalidate a state court's action") (citing 25 U.S.C. § 1914).  Plaintiffs' requested preliminary relief of interim custody is not appropriate.  The ICWA does not authorize the Court to make any substantive custody decisions or to grant any substantive custodial relief.   Thus, even if Plaintiffs prevail on their Section 1914 claim to invalidate the Guardianship Order, the questions of custody and parental rights will remain undecided.  If Plaintiffs wish to have their parental rights restored and to be awarded custody of CV/CT, they not only must first prevail on their ICWA claim to invalidate the Guardianship Order, but they also must thereafter successfully litigate the issues of custody and parental rights in a separate and subsequent state or tribal court proceeding.[3]

---

[3]  Consistent with the jurisdictional requirements set forth in Sections 1911(a) and (b), Plaintiffs might litigate the issues of custody and parental rights in California Superior Court if the state court has concurrent jurisdiction over Defendants' claims and if either good cause exists for the California Superior court to decline to transfer the case to tribal court or the tribal court has

Because the ICWA does not authorize this Court to grant Plaintiffs the relief they seek, Plaintiffs cannot satisfy their burden of satisfying either the likelihood-of-success-on-the-merits or modified-likelihood-of-success-on-the-merits standard. *See supra* at 1-2. The Court therefore denies the Motion for Preliminary Injunction.[4]

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support Thereof, filed December 30, 2013 [Doc. 37], is hereby DENIED.

Dated this 14th day of May, 2014.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

---

declined to exercise jurisdiction. *See* 25 U.S.C. § 1911(b)). Alternatively, Plaintiffs might litigate these claims in tribal court if that court has exclusive jurisdiction over Defendants' claims, *see id.* § 1911(a), or if the California Superior Court transfers the case to tribal court because good cause does not exist for the court to exercise concurrent jurisdiction, *see id.* §1911(b).

[4] Plaintiffs argue that they have satisfied the remaining three requirements of their preliminary injunction burden. *See supra* at 2. The Court already has decided, however, that Plaintiffs have not satisfied the first element of their preliminary injunction burden. This decision is dispositive. The Court therefore need not and does not decide whether Plaintiffs have satisfied the remaining requirements of their preliminary injunction burden.